1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   ELLEN PALOMO,                          No.  14-cv-1769-TLN-SAB

12            Plaintiff,

13      v.                                  **ORDER**

14   CITY OF SANGER, a municipal
     corporation; CITY OF SANGER MAYOR
15   JOSHUA MITCHELL, in his official
     capacity and as an individual; CITY
16   MANAGER BRIAN HADDIX, in his
     official capacity and as an individual; and
17   DOES 1 through 50, inclusive,

18            Defendants.

19

20        This matter is before the Court pursuant to Defendants City of Sanger ("Defendant City"),

21   Mayor Joshua Mitchell ("Mitchell"), and City of Sanger, City Manager Brian Haddix's

22   ("Haddix") Motion to Dismiss.[1]  (ECF No. 14.)  Plaintiff Ellen Palomo ("Plaintiff") filed an

23   opposition to the motion.  (ECF No. 27.)  The Court has reviewed and considered the arguments

24   raised in Defendants' Motion to Dismiss and Reply, along with Plaintiff's Opposition.  The Court

25   hereby GRANTS IN PART and DENIES IN PART Defendants' Motion.

26

27   _____
     [1] In Plaintiff's Opposition to Defendants' Motion to Dismiss, Plaintiff concedes that all causes of actions against
     Defendants Mitchell and Haddix should be dismissed.  (ECF No. 27 at 3.)  This order hereafter refers to previously
28   included defendants as Mitchell and Haddix, respectively.

                                            1

1   I.      FACTUAL BACKGROUND

2           On May 30, 2014, Plaintiff received a letter from Haddix notifying her she would be laid

3   off from her position as Administrative Secretary to the Chief of Police.  (ECF No. 1 at ¶ 11.)

4   The letter identified the purpose of her termination to be in accordance with the Sanger City

5   Code, Chapter 46, Article IV–Layoff Procedures, Section 46-101 to Section 46-109 and Article

6   24 of the Memorandum of Understanding applicable to Plaintiff.  (ECF No. 1 at ¶ 11.)  Plaintiff's

7   termination date was later extended to June 30, 2014, after receiving two notices extending her

8   termination date.  (ECF No. 1 at ¶ 12.)  In the Complaint, Plaintiff claims that the purpose of her

9   termination—budget concerns—is a mere pretext.  (ECF No. 1 at ¶ 11.)  She believes her

10  termination was in retaliation for reporting allegations of harassment, sexual harassment,

11  derogatory racial comments and misconduct by Mitchell.  (ECF No. 1 at ¶ 11.)

12          On March 4, 1998, Plaintiff began her employment as a Records Clerk/Jailer with the City

13  of Sanger Police Department.  (ECF No. 1 at ¶ 13.)  In December of 1999, she was appointed to

14  the position of Administrative Secretary to the Chief of Police.  (ECF No. 1 at ¶ 13.)  Plaintiff

15  continued her employment there until June 30, 2014.  (ECF No. 1 at ¶ 12.)

16          In August 2012, Mitchell spoke with an 18-year old Sanger Police Department Intern,

17  Yolanda Arce, at a local gym.  (ECF No. 1 at ¶ 16.)  He inquired as to Arce's racial makeup and

18  asked her if she was a "mojada[2]."  (ECF No. 1 at ¶ 16.)  Mitchell then requested that Arce show

19  him her cheerleading and gymnastics routine and then asked her if she knew whether Plaintiff

20  liked him.  (ECF No. 1 at ¶ 16.)  Because Arce did not know, Mitchell told her to find out.  (ECF

21  No. 1 at ¶ 16.)  Arce understood the term "liked" to mean in a sexual manner.  (ECF No. 1 at ¶

22  16.)  Later that night, Arce contacted, Plaintiff, her supervisor, and informed Plaintiff of her

23  interactions with Mitchell.  (ECF No. 1 at ¶ 17.)  Plaintiff informed her husband, Daniel Palomo,

24  about the incident.  Mr. Palomo, a former 20-year veteran police officer with the City of Sanger,

25  requested an immediate meeting with Mitchell.  (ECF No. 1 at ¶ 17.)  During the meeting Mr.

26  Palomo told Mitchell to stay away from Plaintiff and Arce.  (ECF No. 1 at ¶ 17.)

27

28  _____
    [2] This is a derogatory term translated to mean wetback and used in the context of immigration.

2

1    The following day, Mr. Palomo went to City Hall to report Mitchell's misconduct to

2    Haddix.  (ECF No. 1 at ¶ 18.)  Mr. Palomo demanded an investigation begin immediately.  (ECF

3    No. 1 at ¶ 18.)  After a week passed, there was still no investigation and Mr. Palomo again went

4    to Haddix's office.  (ECF No. 1 at ¶ 18.)  Haddix assured Mr. Palomo that something would be

5    done.  (ECF No. 1 at ¶ 18.)  No investigation took place; however, Haddix spoke with Plaintiff

6    informing her that the city ordered Mitchell to abstain from speaking with her.  (ECF No. 1 at ¶

7    18.)

8    Since the reporting of Mitchell's conduct, Mitchell allegedly made Plaintiff's work

9    environment awkward and uncomfortable.  (ECF No. 1 at ¶ 19.)  In April 2014, Mitchell

10   suggestively smiled and winked at Plaintiff in the City Hall hallway.  (ECF No. 1 at ¶ 19.)

11   Furthermore, Mitchell openly commented to Haddix, on multiple occasions, that Plaintiff was

12   "the worst thing that ever happened to this city."  (ECF No. 1 at ¶ 19.)

13   Plaintiff argues her termination was not due to budget cuts; she argues this justification is

14   a pretext.  (ECF No. 11 at ¶ 11.)  She introduces facts that show promotions and hirings took

15   place near the same time as her termination.  (ECF No. 1 at ¶ 21.)  Furthermore, Plaintiff alleges

16   that she was targeted for the termination, evidenced by Haddix removing all discretionary power

17   of Chief Rodriguez to make personnel and firing decisions in his department, the department

18   Plaintiff was a part of.  (ECF No. 1 at ¶ 15.)

19   II.    PROCEDURAL BACKGROUND

20   On November 11, 2014, Plaintiff filed a Complaint alleging—against all Defendants—(1)

21   retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 ("Title

22   VII") and 42 U.S.C §§ 1981 and 1982; (2) retaliation in violation of the Fair Employment and

23   Housing Act ("FEHA"); and (3) intentional infliction of emotional distress ("IIED").  (ECF No. 1

24   at 9–13.)

25   On January 1, 2015, Defendants filed a Motion to Dismiss.  (ECF No. 14.)  Defendants

26   allege that the causes of action for retaliation under Title VII of the Civil Rights Act of 1964 and

27   FEHA, for retaliation under 42 U.S.C. §§ 1981 and 1982, and for IIED should be dismissed

28   because the Complaint fails to allege sufficient facts to support a valid claim.  (ECF No. 14 at 3–

1   10.)

2        On February 11, 2015, Plaintiff filed an Opposition to Defendants' Motion to Dismiss.

3   (ECF No. 27.)  Plaintiff conceded that her claims pursuant to 42 U.S.C. §§ 1981 and 1982, IIED,

4   and all claims asserted against Defendants Mitchell and Haddix in their individual capacity,

5   should be dismissed.  (ECF No. 27 at 3.)  Plaintiff acknowledges that the only issue remaining is

6   whether Plaintiff has sufficiently stated a cause of action for retaliation under Title VII and FEHA

7   against Defendant City of Sanger.  (ECF No. 27 at 3.)  In Defendants' Reply to Plaintiff's

8   Opposition, filed February 19, 2015, Defendant City asserts that Plaintiff fails to meet the burden

9   of establishing a prima facie case under Title VII and FEHA.  (ECF No. 31 at 2.)

10        Since Plaintiff conceded to the dismissal of the above mentioned claims, the Court will

11   focus on the remaining issues: whether Plaintiff sufficiently stated her cause of action for

12   retaliation under Title VII and FEHA against Defendant City.

13   III.      STANDARD OF LAW: MOTION TO DISMISS

14        Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

15   statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

16   U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

17   defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic*

18   *v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

19   pleading standard relies on liberal discovery rules and summary judgment motions to define

20   disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*,

21   534 U.S. 506, 512 (2002).

22        On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

23   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

24   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

25   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

26   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

27   relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

28   factual content that allows the court to draw the reasonable inference that the defendant is liable

4

1   for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

2          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

3   factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

4   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

5   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

6   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

7   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

8   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

9   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

10  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

11  been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

12  459 U.S. 519, 526 (1983).

13         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

14  facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

15  *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[] [his or her] claims . . . across

16  the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.  While

17  the plausibility requirement is not akin to a probability requirement, it demands more than "a

18  sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a

19  context-specific task that requires the reviewing court to draw on its judicial experience and

20  common sense." *Id.* at 679.

21         In ruling upon a motion to dismiss, the court may consider only the complaint, any

22  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

23  Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

24  *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

25  1998).

26         If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

27  amend even if no request to amend the pleading was made, unless it determines that the pleading

28  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

5

1   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));

2   *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

3   denying leave to amend when amendment would be futile).  Although a district court should

4   freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

5   deny such leave is 'particularly broad' where the plaintiff has previously amended its

6   complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

7   2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

8       IV.    <u>ANALYSIS</u>

9       Plaintiff alleges a retaliation claim in violation of Title VII, 42 U.S.C § 2000e-3 and a

10   retaliation claim in violation of California Government Code § 12940h because she exercised her

11   rights under the FEHA.  (ECF No. 1 at ¶ 26–30.)  The Court dismisses the other claims[3] since

12   Plaintiff concedes they be dismissed.  The Court addresses the remaining claims of Title VII and

13   FEHA.  Retaliation under Title VII and FEHA are analyzed under the same parameters and

14   therefore will be addressed together.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.

15   2000).

16       Title VII makes it unlawful for an employer to "discriminate against any individual with

17   respect to his compensation, terms, conditions, or privileges of employment, because of such

18   individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  It also protects

19   an employee by prohibiting an employer from retaliating against an individual because she has

20   made a complaint of discrimination or opposed a discriminatory or unlawful act.  42 U.S.C. §

21   2000e-3.  Title VII claims are governed by a burden shifting framework.  *McDonnell Douglas*

22   *Corp. v. Green*, 411 U.S. 792, 802 (1973).  Initially, the burden rests with the plaintiff to establish

23   a prima facie case of retaliation.  *Id.*  Plaintiff must allege sufficient facts to establish a prima face

24   case of retaliation under Title VII.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  The

25   plaintiff must show that: "(1) [s]he engaged in a protected activity; (2) h[er] employer subjected

26   h[er] to an adverse employment action; and (3) a causal link exists between the protected activity

27   

---

28   [3] The dismissed claims include: retaliation under 42 U.S.C. §§ 1981 and 1982, and IIED.  Furthermore, all claims against Mitchell and Haddix are also dismissed. The only remaining Defendant is City of Sanger.

1    and the adverse action. *Id.* If the plaintiff can establish a prima face case, the burden shifts to the

2    defendant "to articulate some legitimate nondiscriminatory reason" for the adverse employment

3    action. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once the defendant has done so, the burden

4    shifts back to the plaintiff, who must show the employer's reason for the adverse employment

5    action is a pretext for a retaliatory motive. *Texas Department of Community Affairs v. Burdine*,

6    450 U.S. 248, 253 (1981).

7         Defendant City asserts that the Complaint fails to allege sufficient facts to support a valid

8    claim of retaliation and therefore the Court should dismiss the claim. (ECF No. 15 at 3.) More

9    specifically, Defendant argues Plaintiff (1) did not engage in a protected activity and (2) failed to

10   establish a causal connection between the protected activity and the adverse employment action.

11   (ECF No. 15 at 3–6.) The Court will address each element of Plaintiff's Title VII claims below.

12        **A. Plaintiff's Prima Facie Case**

13             1. Engaging in a Protected Activity

14        In order to meet her prima facie burden for her retaliation claim, Plaintiff must first show

15   that she was engaged in a protected activity. *Espinoza v. Spencer*, No. 10-CV-03213 TLN-DAD,

16   2014 WL 3689303, at *6 (E.D. Cal. July 23, 2014). Filing a complaint with the Equal

17   Employment Opportunity Commission (EEOC) is considered to be a protected activity. *See* 42

18   U.S.C. § 2000e-3(a). Additionally, making an informal complaint to a supervisor also constitutes

19   a protected activity. *Ray*, 217 F.3d at 1240 n.3.

20        A plaintiff can engage in a protected activity in two manners: (1) by participating in the

21   machinery set up by Title VII to enforce its provisions; or (2) by opposing conduct made an

22   unlawful employment practice by the subchapter. *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th

23   Cir. 1997). These two methods are hereafter referred to as the Participation Clause and the

24   Opposition Clause respectively.

25        Defendant City conflates the Participation Clause and opposition clause in its motion to

26   dismiss. (ECF No. 15 at 4–5.) It is important to note, only one is required in order to show

27   Plaintiff participated in a protected activity. *Hashimoto*, 118 F.3d at 680. The Court addresses

28   the Participation and Opposition Clauses separately in order to keep the two concepts distinct.

<u>a. The Participation Clause</u>

The Participation Clause provides that it is unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Defendant City argues that Plaintiff did not engage in a protected activity because her husband, Mr. Palomo, was the one to report the unlawful employment practice. (ECF No. 15 at 4.) Defendant City argues that since Plaintiff herself did not engage in the protected activity, she therefore did not participate in any manner in an investigation, proceeding or hearing of this subchapter. (ECF No. 31 at 3.) Defendant City contends that a plain reading of the statute demonstrates that the employee must be the one to engage in the protected activity. (ECF No. 15 at 4, ECF No. 31 at 2–3.) Defendant City maintains that there is no mention of someone acting on behalf of an employee when filing a complaint in either the statute itself or litigation treatises. (ECF No. 31 at 3.) Defendant City argues that this omission suggests that the intent of the Congress was to protect only actions made by the employee. (ECF No. 31 at 3.)

Further, Defendant City also asserts that even if section 2000e-3(a) did allow individuals to act on behalf of an employee, Plaintiff fails to establish facts that she authorized Mr. Palomo to act on her behalf. (ECF No. 31 at 3.) Furthermore, Defendant City claims that it is unclear what Mr. Palomo actually stated to Haddix. (ECF No. 31 at 3.) However, the Court notes that on a motion to dismiss the factual allegations of the complaint must be accepted as true, *Cruz*, 405 U.S. at 322, and reasonable inferences may be drawn from the complaint. *Retail Clerks Int'l Ass'n*, 373 U.S. at 753 n.6. Plaintiff, in her Complaint, states that she discussed the misconduct with her husband, and he reported Mitchell's misconduct to Haddix. (ECF No. 1 at ¶ 17, ECF No. 27 at 5.) In Plaintiff's Opposition she explains that her husband acted on "Plaintiff's behalf, upon Plaintiff's request, and with Plaintiff's full knowledge." (ECF No. 27 at 5.) These allegations are accepted as true for purposes of this motion. Furthermore, the contents of his conversation can be inferred to be a discussion of the misconduct Plaintiff endured.

In Plaintiff's Opposition to the Motion to Dismiss, Plaintiff responds by arguing that 42 U.S.C. § 2000e-3(a) was drafted broadly to include individuals filing a complaint, acting on an

1    employee's behalf.  (ECF No. 27 at 5.)  She specifically argues that the language of the statute,

2    "in any manner," sets forth a broad definition and would include her husband filing the complaint

3    with Haddix.  (ECF No. 27 at 5.)  She further argues that the informal complaint was clearly

4    made on her behalf, upon her request, and with her full knowledge and therefore her husband was

5    acting in her benefit.  (ECF No. 27 at 5.)

6         While 42 U.S.C. § 2000e-3(a) is written to mention only the employee, the Participation

7    Clause has been interpreted broadly.  *E.E.O.C. v. California Psychiatric Transitions, Inc*., 725 F.

8    Supp. 2d 1100, 1107 (E.D. Cal. 2010).  Congress intended for the term "any" to have an

9    expansive meaning, especially since Congress did not add any language to limit the breadth of the

10   word.  *Jute v. Hamilton Sundstrand*, 420 F.3d 166, 174 (2nd Cir. 2005).  The anti-retaliation

11   provision was created to prevent harm to employees.  *E.E.O.C. v. California Psychiatric*

12   *Transitions, Inc,*. 725 F. Supp. 2d at 1107.  The Participation Clause includes individuals whom

13   the employer believes assisted in the protected activity, thus expanding the pool of individuals

14   who engaged in the protected activity.  *U.S.E.E.O.C. v. Bojangles Resturants, Inc.*, 284 F. Supp.

15   2d 320, 329 (2003).  Title VII combats unlawful employment practices and does so by

16   "maintaining unfettered access to statutory remedial mechanisms."  *Robinson v. Shell Oil Co.*,

17   519 U.S. 337, 346 (1997).

18        It is reasonable to believe that an employee's spouse, acting with the permission of the

19   employee, can file a claim on behalf of the employee.  If the Court accepts Defendant City's

20   narrow interpretation of the statute, it would run counter to Congress' intent and would limit the

21   opportunity employees have in seeking access to remedial measures for unlawful employment

22   practices.  Once again, the anti-retaliation provision is a preventative measure created to protect

23   employees.  The Court notes that an employee might find it difficult to face her supervisor and

24   admit to unlawful activity by another supervisor, and as a result may prefer to have her spouse

25   make a report.  In such situations, it would be counterintuitive to preclude the employee's

26   retaliation simply because she did not make the complaint herself.  Restricting the filing of a

27   complaint to the employee, would overburden the employee in certain situations.  The Court in

28   *California Psychiatric Transitions, Inc.*, impliedly found a complaint filed by someone other than

9

1   the employee to be valid. *California Psychiatric Transitions, Inc*., 725 F. Supp. 2d at 1108.[4]

2   While the issue in *California Psychiatric Transitions, Inc.* was whether the individual who filed

3   the complaint had standing to bring the retaliation case for herself, the Court implicitly

4   demonstrated that filing the complaint does not have to be done by the individual who

5   experienced the unlawful act. *Id.* Furthermore, the Participation Clause includes employees

6   whom the employer has reason to believe assisted in the protected activity. *Id.*

7         Although Mr. Palomo is not an employee of the City, Defendant City had reason to

8   believe Plaintiff was involved and participated in the protected activity. It is reasonable to

9   believe that Plaintiff told her husband about the incident and requested he talk to Haddix. There

10  is no indication that her husband learned of the incident from anyone else. Because the unlawful

11  act involves Plaintiff, it gives the City strong reason to believe that she was involved in the

12  protected activity.

13        The primary purpose behind the anti-retaliation provision is to shield employees from

14  employer retaliation. This protective measure has been interpreted broadly to include a number

15  of protected activities. Because of the liberal interpretation it has been given, the Court deems it

16  reasonable that Mr. Palomo not be precluded from filing the complaint on behalf of his wife,

17  Plaintiff. Despite the fact that Plaintiff did not personally make the complaint, she did participate

18  in the protected activity. Mr. Palomo engaged in the protected activity on behalf of and for the

19  benefit of Plaintiff. As a result, the Court finds that Plaintiff engaged in a protected activity for

20  purposes of Title VII through the Participation Clause, and Defendant City had reason to believe

21  she assisted in the protected activity.

22                    b. The Opposition Clause

23        A plaintiff can also engage in a protected activity if her adverse employment action occurs

24  as a result of the employee's opposition to conduct which resulted in an unlawful employment

---

25  [4] In this case, the plaintiff helped her friend, Somera, bring a complaint regarding sexual harassment. The plaintiff, a
26  close friend in and outside of work to Somera, participated in the filing and helped her complete her EEOC
    complaint. Subsequently, the plaintiff was fired from her job and brought a Title VII retaliation claim. The court
27  implicitly allowed the plaintiff to file a complaint for Somera; demonstrating a complaint does not need to be filed by
    the individual who was subjected to the sexual harassment. This Court notes that a spousal relationship is an even
    closer and stronger relationship than the friendship in *California Psychiatric Transitions, Inc*., suggesting that a
28  spouse filing on behalf of an employee is acceptable.

1   practice.  *Hashimoto*, 118 F.3d at 680.

2           Defendant City argues that because the alleged unlawful activity took place at a local gym

3   and not at the workplace, it should not be considered for anti-retaliation purposes.  (ECF No. 15

4   at 5.)  However, Defendant City overlooks the established rule that "the anti-retaliation provision

5   does not confine the actions and harms it forbids to those that are related to employment or occur

6   at the workplace."  *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 53 (2006).

7   Therefore, regardless of where Mitchell made the comment, it would be considered an unlawful

8   employment practice.

9           Defendant City also argues that since Plaintiff was not present when the comments were

10  made, she cannot bring a Title VII claim.  (ECF No. 15 at 5.)  However, the Ninth Circuit found

11  that even when a plaintiff is not present when the discriminatory remarks were made, it

12  contributed to a hostile work environment claim for purposes of a § 1981 claim.  *Johnson v.*

13  *Riverside Healthcare System, LP*, 534 F.3d 1116, 1123 (9th Cir. 2008).  This was later applied to

14  a Title VII claim finding that all the conduct, regardless of whether plaintiff heard the comments,

15  was relevant to plaintiff's case.  *Paul v. Asbury Automotive Group, LLP*, No. 06-1603, 2009 WL

16  188592, at *5 (D. Or. Jan, 23, 2009).  Therefore, the fact that Plaintiff in this case was not present

17  when Mitchell made remarks should not have a bearing on Plaintiff's ability to use the remarks

18  for a Title VII retaliation claim.

19          Defendant City in its Motion to Dismiss argues that Mitchell's alleged comment does not

20  support a claim of retaliation because there is no reasonable basis to believe that Mitchell's

21  actions were unlawful.  (ECF No. 15 at 4–5.)  Specifically, Defendant City contends that a

22  reasonable person would not consider Mitchell's conduct, asking Intern Arce about whether

23  Plaintiff liked him, to be unlawful.  (ECF No. 15 at 5.)  Plaintiff argues that whether or not the

24  activity actually violated Title VII is irrelevant and she only needs to show that she had a good

25  faith, reasonable belief that Mitchell's actions were unlawful.  (ECF No. 27 at 5.)  In her

26  Complaint, Plaintiff includes that she had a good faith reasonable belief for why Mitchell's

27  actions violated Title VII.  (ECF No. 27 at 5.)

28          The reasonableness of a belief that an unlawful employment practice occurred is

1  determined by an objective standard—"one that makes due allowance, moreover, for the limited

2  knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their

3  claims." *Moyo v. Gomez*, 32 F.3d 1382, 1385–86 (9th Cir. 1994).  Therefore, the comment made

4  to Arce, taken in the context of the gym setting, may warrant a belief of unlawful conduct.  (ECF

5  No. 1 at ¶ 16.)  Asking an eighteen-year old intern to perform a cheerleading and gymnastics

6  routine and then asking her about whether someone likes him in a sexual way can objectively be

7  seen as a violation of Title VII.  (ECF No. 1 at ¶ 16.)  Such an encounter can warrant an

8  objectively good faith belief that the comments violated Title VII.

9        As a result, Plaintiff opposed what she reasonably believed was an unlawful act.

10  Therefore, the Court finds that Plaintiff satisfies the first requirement of engaging in a protected

11  activity through the Opposition Clause.

12              2. Adverse Employment Action

13        The parties do not contest that Plaintiff suffered an adverse employment action when she

14  was laid off initially in June of 2014.  An adverse employment action is a wide array of

15  disadvantageous changes in the workplace.  *Ray*, 217 F.3d at 1240.  A layoff unquestionably

16  constitutes an adverse employment action because it is a disadvantageous change to Plaintiff's

17  employment.  Since the parties do not contest this element, the Court finds that Plaintiff in this

18  case suffered an adverse employment action and has therefore met the second element of a Title

19  VII retaliation claim.

20              3. Causal Link Between the Protected Activity and the Adverse Employment Action

21        Finally, in order for Plaintiff to establish a prima facie case of Title VII retaliation, she

22  must prove there is a causal link between the protected activity—filing of the complaint—and the

23  adverse employment action—her layoff.

24        Defendant City argues that Plaintiff fails to establish a causal connection between her

25  protected activity and the employer's adverse employment action.  (ECF No. 15 at 5.)  Defendant

26  City suggests that because the protected activity, the complaint, occurred nearly twenty months

27  before Plaintiff's layoff, it cannot be causally connected.  (ECF No. 31 at 4.)  Furthermore,

28  Defendant City asserts that the causal link is broken when there is a justification for the adverse

1    employment action, which in this case was the City's budget.  (ECF No. 31 at 5.)

2          Plaintiff argues that the causal link is not broken and does so by relying on *Cohen* (ECF

3    No. 27 at 6) which states that to show the required causal link, there must be evidence that the

4    employer was aware the plaintiff engaged in the protected activity.  *Cohen v. Fred Meyer, Inc,.*

5    686 F.2d 793, 796 (9th Cir. 1982).  Since Plaintiff's husband informed Haddix of an incident

6    involving Plaintiff, Haddix should have known Plaintiff was engaged in the protected activity;

7    thereby establishing some causal link.

8          Not only must there by a causal link established, but it must be proved according to

9    traditional principals of but-for causation.  *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 133 S.Ct.

10   2517, 2533 (2013).  Plaintiff does not need to establish a legitimate motive, but only that there is

11   evidence that retaliation was a motive for the challenged action.  *Id.*  A pattern of ongoing

12   retaliation following the protected activity can help support a finding of causation.  *Adetuyi v.*

13   *City & Cnty. Of San Francisco*, 63 F. Supp. 3d 1073, 1090 (N.D. Cal. 2014).  A larger gap

14   between the protected activity and the adverse action is not fatal.  *Id.*  Where there is a short

15   period of time between the events, causation can be inferred.  *Villiarimo v. Aloha Island Air, Inc.*,

16   281 F.3d 1054, 1065 (9th Cir. 2002).  But in cases where there is a larger gap in time, timing

17   alone will not prove causation.  *Id.*  A specific time period cannot be applied mechanically to all

18   cases.  *Adetuyi*, 63 F. Supp. 3d at 1090 (reasoning that a pattern of ongoing retaliatory acts since

19   the protected conduct occurred could establish causation despite the five-year gap between the

20   protected activity and the adverse employment action).  But in cases where there is a longer time

21   lapse, timing alone will not prove causation.  *Villiarimo*, 281 F.3d at 1065.  Therefore, a twenty

22   month gap is not sufficient by itself to break the causal link.

23         Furthermore, the causal link can be established through circumstantial evidence.  *Jordan*

24   *v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988).  Plaintiff, in her Complaint introduces facts to

25   show that she performed well in her position.  (ECF No. 1 at ¶ 13.)  She received annual Merit

26   Pay increases, received "Exceeds Expectations" or "Outstanding" on all job evaluations, and

27   never "received any form of discipline."  (ECF No. 1 at ¶ 13.)  Her honorable service and annual

28   Merit Pay increases are evidence that Plaintiff was good at her job.  Therefore, when she was laid

1   off in response to budget cuts, she believed it was in retaliation for her protected activity.  In

2   addition, similar to *Adetuyi*, Plaintiff experienced ongoing retaliation following the protected

3   activity when Mitchell suggestively smiled and winked at her, and when Plaintiff received

4   multiple layoff notices extending her time as Administrative Secretary.  *Adetuyi*, 63 F. Supp. 3d at

5   1090 (reasoning that a pattern of ongoing retaliatory acts since plaintiff filed a lawsuit against the

6   City in 2007 was evidence of causation for a retaliation action under Title VII).  Plaintiff's initial

7   layoff notice, the two extensions of her termination (each consisting of an extension of a week),

8   and the smiling and winking in the hall, collectively can establish a causal link between the

9   protected activity and the adverse employment action.  Causation is further proven by Haddix

10  removing all the discretionary power of Chief Rodriguez to make firing decisions.  Chief

11  Rodriguez was in the best position to make firing decisions for his department, and even offered

12  to fire two other individuals instead of Plaintiff; however he was overridden by Haddix's decision

13  to layoff Plaintiff.

14         Since there were reoccurring events between the two events, similar to *Adetuyi*, and a

15  unique firing method targeting Plaintiff, causation can be inferred from circumstantial evidence

16  and the twenty months between the two events does not break the causal link.  Plaintiff therefore,

17  has met the third element in establishing her prima face case of retaliation under Title VII.

18         **B.  Burden Shifting**

19         Because Plaintiff established a prima face case, the burden then shifts to Defendant City to

20  "articulate a nondiscriminatory reason" for the adverse employment action.  *McDonnell Douglas*

21  *Corp.*, 411 U.S. at 802.  Defendant City claims that the reason for Plaintiff's layoff was due to

22  budgetary reasons.  (ECF No. 31 at 5.)  Haddix asserted that the City insisted on getting $100,000

23  more in the City's reserve and therefore the City terminated Plaintiff.  (ECF No. 1 at ¶ 24.)

24         Since Defendant City offered a nondiscriminatory reason behind Plaintiff's layoff, the

25  burden shifts back to Plaintiff, who must show Defendant City's reason for the adverse

26  employment action is a pretext to a retaliatory motive.  *Texas Department of Community Affairs*,

27  450 U.S. at 253.  Plaintiff in her Complaint and her Opposition alleges Defendant City's

28  nondiscriminatory reason is a pretext.  She supports her argument by alleging she was good at her

14

1  job, never disciplined during her time working there, and always received merit based raises

2  annually.  Furthermore, there is evidence that at the time Plaintiff was laid off, Defendant City

3  promoted and hired new individuals.  (ECF No. 1 at ¶ 21.)  During the same week of Plaintiff's

4  layoff notice, interviews were occurring for recruiting a fourth Finance Clerk.  (ECF No. 1 at ¶

5  21.)  Haddix commented during the City Council meeting that Plaintiff made too much money

6  and during this same meeting Haddix gave himself a $10,000 to $15,000 raise for subsequent

7  years, resulting in a total compensation package of $44,800 per year.  (ECF No. 1 at ¶ 21.)  In

8  addition, Haddix ignored Officer Rodriguez's recommendation to layoff other individuals in his

9  department (ECF No. 1 at ¶ 15), instead, Haddix made the decision to target Plaintiff.  Based on

10  the facts alleged in Plaintiff's Complaint, she has met the burden of showing that the reason for

11  Plaintiff's termination could be a pretext, and that her termination was an action taken against her

12  to retaliate for her reporting Mitchell's misconduct.

13        V.     <u>CONCLUSION</u>

14        Plaintiff has met the Title VII and FEHA prima facie case burden of showing (1) she

15  engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a

16  casual link between the protected activity and the adverse employment action.  For reasons set

17  forth above, the Court hereby GRANTS Defendants Motion to Dismiss Plaintiff's Complaint IN

18  PART and DENIES it IN PART.  (ECF No. 15.)  Defendants' motion is GRANTED as follows:

19        1.  Plaintiff's sub-Claims Pursuant to 42 U.S.C §§ 1981 and 1982,

20        2.  Plaintiff's claims for Intentional Infliction of Emotional Distress, and

21        3.  Plaintiff's claims against Defendants Mitchell and Haddix

22  Defendants' motion is DENIED as to Plaintiff's claims pursuant to Title VII and FEHA.

23

24  IT IS SO ORDERED.

25  Dated:  September 24, 2015

26

27                         Troy L. Nunley
                       United States District Judge

28